## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARIUS PATTERSON**                                          **CIVIL ACTION**

**VERSUS**                                                         **NO.  13-3503**

**STEVE RADER, WARDEN**                                  **SECTION "C"(2)**

## REPORT AND RECOMMENDATION

   This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Darius Patterson, is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2] On November 23, 2009, Patterson and a co-defendant, Michael P. Long, were charged by bill of information in Jefferson Parish with one count of armed robbery while using a handgun.[3] The Louisiana Fifth Circuit Court of Appeal in relevant part summarized the facts of the case as determined at the trial of co-defendant Long as follows:

> Rebecca Gavin worked as a bartender at the Triangle West Bar located at 10801 Jefferson Highway in River Ridge, Louisiana during the early morning hours of October 31, 2010.  After the last group of patrons left for the evening, Rebecca closed and locked the front door around 2:15 A.M.  Eric Hymel, a regular customer, remained in the bar with her so he could walk Rebecca to her car as he had always done.
>
> Outside of the bar door stood Long, another regular customer, and 16-year-old Darius Patterson. Long's face was covered with a white shirt, and Darius, who wore a black coat with a fur hood, had covered his face with a black ski mask. Long knocked on the bar's front door. When no one answered, he uncovered his face hoping to use his relationship with Rebecca and Eric to gain entrance into the bar.  When Eric heard the knock, he looked up and saw Long through the door window.  Eric informed Rebecca that it was "Mike."  She then went to the door and spoke with him through the half-opened door.  Long asked if he could come inside to get a beer.  She complied.  Rebecca did not find Long's request strange because he had been at the bar after hours before.
>
> As Rebecca walked to the bar to get the beer, she saw someone, later identified as Darius, enter behind Long. Rebecca did not realize a robbery was about to occur.  She simply looked at Darius in the coat and ski mask and thought to herself, "it's not that cold outside." While Rebecca was looking at Darius,

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 2, Bill of Information, 11/23/09.

however, Long yelled "Alright, ya'll know what's up. Give me the money." When she turned to face Long, he had pulled out a shotgun.

Darius, who remained masked, jumped on top of the bar, pointed a small revolver in Rebecca's face and demanded the money from the register. Eric, who was standing at the bar with Long, asked Long why he was doing this and begged Long not to shoot him. Meanwhile, Darius obtained the money from the register and demanded that Rebecca give him the money from the poker machines as well. When Rebecca explained that she did not have access to the poker machines, Darius took her to the back to get money from the safe. Rebecca unlocked the safe and assisted Darius in retrieving the money which they stuffed into smaller bags. He then unzipped his coat and revealed a yellow back pack braced on the front of his chest and instructed Rebecca to put the money in there. Darius brought Rebecca back up to the front of the bar and told Long that he "got it." As they left, Long went into a rant about how times were hard and that this was not personal, stating that he was just trying to get back at Janice [the bar owner]. As the perpetrators exited the bar, Long asked Eric for a cigarette and told them to go ahead and call the police. Rebecca then pushed the panic button. She and Eric both called 9-1-1. The entire ordeal was caught on the bar's video surveillance cameras.

Long and Darius stole $16,723.00 during the robbery. The two fled to a nearby railroad track where they discarded the shotgun. They then went to a friend's house, divided the proceeds, and went their separate ways.

Deputy David Chaplin, of the Jefferson Parish Sheriff's Office, arrived at the bar within three to five minutes after the 9-1-1 call had been placed. When he arrived, Dep. Chaplin performed a preliminary examination and interviewed both Rebecca and Eric. Eric gave the deputy Long's name and address. Rebecca and Eric both identified Long from a photographic lineup.

A reliable confidential informant later contacted Detective Derrick Magee of the Jefferson Parish Sheriff's Office and told him that he had information related to the armed robbery that occurred on Jefferson Highway. The informant identified the suspects as "Darius" and "Mike Long." The detectives confirmed Darius' identity and applied for a search warrant to search his home for proceeds from the robbery. They executed the search warrant on November 4, 2011, at 2303 Tenth Street. While there, the officers retrieved several guns, including a .22 handgun, U.S. Currency, drug paraphernalia, a black ski mask, and a black coat with a fur hood. Darius was taken to the detective's bureau where he voluntarily signed a juvenile rights of arrestee form in the presence of his grandparents. Darius gave a taped statement about the robbery and identified Long as his co-perpetrator. He also told the officers where the two of them had discarded the shotgun, which was near a railroad track a few blocks from Wicker

3

Neal Avenue in River Ridge.  Darius accompanied the officers to the location so
they could retrieve the gun.

A few days later, the detectives obtained additional information which led
them to believe Long was located at 613 Wicker Neal Avenue. The police went
to that address on November 6, 2010, where the homeowner gave them
permission to search.  The detectives did not find Long during that visit; however,
when they left, the detectives were informed that Long was definitely there.  They
returned to 613 Wicker Neal and obtained permission to search again. This time,
they found Long hiding in a closet.  Det. Canas <u>Mirandized</u> Long and attempted
to question him. Because Long was very combative, Det. Canas ceased
questioning and transported Long to jail.  He visited Long a few days later at the
jail and re-<u>Mirandized</u> him. Long voluntarily signed the rights of arrestee form
and denied any involvement in the robbery, stating that he was with his girlfriend
on that night.

(footnotes omitted) <u>State v. Long</u>, 81 So.3d 875 (La. App. 5th Cir. 2011).[4]

On August 12, 2010, Patterson entered a guilty plea to the charge of armed

robbery with a firearm.[5]  The state trial court sentenced him to serve 15 years in prison

at hard labor and without benefit of parole, probation or suspension of sentence.[6]  His

conviction became final thirty (30) days later, on Monday, September 13, 2010,[7] because

he did not appeal[8] or seek reconsideration of his sentence.  <u>Roberts v. Cockrell</u>, 319 F.3d

---

[4]The jury found Long guilty as charged, and he was sentenced to serve 99 years in prison without
benefit of parole, probation or suspension of sentence.  St. Rec. Vol. 1 of 2, Trial Minutes (Long),
8/12/10; Sentencing Minutes (Long), 8/23/10.

[5]St. Rec. Vol. 1 of 2, Plea Minutes, 8/12/10; Plea Transcript, 8/12/10; Waiver of Constitutional
Rights Plea of Guilty, 8/12/10.

[6]St. Rec. Vol. 1 of 2, Plea Minutes, 8/12/10; Plea Transcript, p. 9, 8/12/10.

[7]The thirtieth day was Saturday, September 11, 2010.  Pursuant to La. Code Crim. P. art. 13, the
end of the period became the next non-holiday weekday, which was Monday, September 13, 2010.

[8]In general, under Louisiana law, a guilty plea waives all non-jurisdictional defects in the
proceedings before the plea and precludes review of such defects either by appeal or post-conviction

4

690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); see Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. P. art. 914[9]).

On May 2, 2011, Patterson submitted a motion to the state trial court seeking to correct his allegedly illegal and invalid sentence.[10]  Patterson argued that his sentence was ten years longer than the five-year sentence provided under La. Rev. Stat. § 14:64.3[11] and that his continued incarceration under the illegal sentence violated his due process rights.  The state trial court denied the motion on May 27, 2011, explaining that, as Patterson had agreed in his plea negotiations, the 15-year sentence was  the sum of the

---

relief.  State v. Crosby, 338 So.2d 584, 588 (La. 1976).

[9]The Cousin court recognized that the failure to move timely for appeal under La. Code Crim. P. art. 914 renders the conviction and sentence final at the expiration of that period, citing State v. Counterman, 475 So.2d 336, 338 (La. 1985).

[10]St. Rec. Vol. 1 of 2, Motion to Correct an Illegal and/or Set Aside an Invalid Sentence, 5/10/11 (dated 5/2/11).

[11]La. Rev. Stat. § 14:64.3(A) provides as follows:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

five-year enhancement under La. Rev. Stat. § 14:64.3 and the ten-year minimum sentence for armed robbery itself under La. Rev. Stat. § 14:64.[12]

Patterson sought review in the Louisiana Fifth Circuit, asserting the same claims and adding the additional argument that La. Rev. Stat. § 14:64.3 was not a separate criminal charge for which the state trial court could accept a guilty plea.[13]  The court denied the application on August 22, 2011, finding no error in the trial court's ruling.[14] The Louisiana Supreme Court denied his related writ application without stated reasons on May 4, 2012.[15]

In the meantime, on September 22, 2011, Patterson submitted to the state trial court an application for post-conviction relief in which he argued that his counsel provided ineffective assistance when he failed to file an appeal or advise him of his right to appeal.  He included four grounds for relief to be raised on appeal and/or which would

---

[12]St. Rec. Vol. 1 of 2, Trial Court Order, 5/27/11.  La. Rev. Stat. § 14:64 provides as follows:
A.  Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B.  Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.

[13]St. Rec. Vol. 2 of 2, 5th Cir. Writ Application, 11-KH-754, 7/28/11 (dated 7/20/11, postmarked 7/25/11).

[14]St. Rec. Vol. 1 of 1, 5th Cir. Order, 11-KH-754, 8/22/11.

[15]St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2011-KH-1945, 5/4/12; La. S. Ct. Writ Application, 11-KH-1945, 9/8/11 (dated 9/5/11, postal metered 9/6/11); St. Rec. Vol. 1 of 2, La. S. Ct. Letter, 201-KH-1945, 9/8/11.

entitle him to post-conviction relief: (1) The state trial court erred when it accepted a constitutionally infirm guilty plea to an enhancement statute. (2) He was denied effective assistance of counsel when counsel failed to object to or preserve petitioner's right to seek review of the lack of evidence and when counsel failed properly to investigate the case before advising him to enter the guilty plea. (3) A review for errors patent. (4) The state trial court erred by imposing an excessive sentence and failing to state the reasons for sentencing on the record.

On January 24, 2012, after receiving a response from the State, the trial court denied Patterson's application, finding that his guilty plea waived his right to appeal and that he had not preserved any issues for appeal.  The court further found that Patterson failed to show his entitlement to post-conviction relief on the other listed claims.[16]  The court specifically found no merit in the first two claims and that the latter two claims were not proper grounds for seeking post-conviction relief, citing La. Code Crim. P. art. 930.3 and <u>State ex rel. Melinie v. State</u>, 665 So.2d 1172 (La. 1996).[17]  Patterson did not seek further review of this ruling.

---

[16]St. Rec. Vol. 1 of 2, Trial Court Order, 1/24/12; State's Opposition, 12/29/11; Answer in Opposition, 1/18/12 (dated 1/12/12); Trial Court Order, 2/2/12.

[17]La. Code Crim. P. art. 930.3 provides the grounds on which a defendant can seek post-conviction relief.  In <u>State ex rel. Melinie</u>, the Louisiana Supreme Court, relying on Article 930.3, ruled that claims of errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

Patterson submitted a second application for post-conviction relief to the state trial court on June 28, 2012, urging several grounds for relief:[18]  (1) The state trial court erred in accepting a guilty plea where (a) the non-existent charge under La. Rev. Stat. § 14:64.3 was not a separate crime, and was only an enhancement provision; (b) the sentence was ten years longer than the five-year sentence provided in La. Rev. Stat. § 14:64.3; and (c) he did not knowingly and voluntarily waive his constitutional rights because he did not understand the charge to which he entered the plea. (2) He was denied effective assistance of counsel because his counsel gave misleading advice that he should enter a guilty plea to a non-existent charge and accept a sentence that exceeded the sentencing range. (3) The cumulative errors surrounding the entry of the plea, including the ineffective assistance of counsel, violated equal protection and due process.

The state trial court denied relief on August 3, 2012, finding that the application was procedurally barred as repetitive and successive, and therefore prohibited under La. Code Crim. P. art. 930.4(B), (C), (D) and (E) and State v. Gaines, 701 So.2d 688 (La. App. 4th Cir. 1997).[19]

---

[18]St. Rec. Vol. 1 of 2, Application for Post-Conviction Relief, 7/3/12 (dated 6/28/12).

[19]St. Rec. Vol. 1 of 2, Trial Court Order, 8/3/12.

The Louisiana Fifth Circuit denied Patterson's subsequent writ application on October 10, 2012, finding no error in the trial court's ruling.[20]  The Louisiana Supreme Court also denied his related writ application without stated reasons on April 1, 2013.[21]

## II.   FEDERAL HABEAS PETITION

On May 23, 2013, the clerk of this court filed Patterson's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[22] (1) The state trial court erred in accepting a guilty plea where (a) the non-existent charge under La. Rev. Stat. § 14:64.3 was not a separate crime and was only an enhancement provision; (b) the sentence was ten years longer than the five-year sentence provided in La. Rev. Stat. § 14:64.3; and (c) he did not knowingly and voluntarily waive his constitutional rights because he did not understand the charge to which he entered the plea. (2) He was denied effective assistance of counsel because his counsel gave misleading advice that he should enter a guilty plea to a non-existent charge and accept a sentence that exceeded the sentencing range. (3) The cumulative errors surrounding the entry of the plea, including the ineffective assistance of counsel, violated equal protection and due process.

---

[20]St. Rec. Vol. 1 of 2, 5th Cir. Order, 12-KH-675, 10/10/12; St. Rec. Vol. 2 of 2, 5th Cir. Writ Application, 12-KH-675, 9/6/12 (dated 8/24/12, postmarked 8/27/12).

[21]St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2012-KH-2399, 4/1/13; La. S. Ct. Writ Application, 12-KH-2399, 11/7/12 (dated 10/31/12, postal metered 11/1/12).

[22]Rec. Doc. No. 3.

9

The State filed a response in opposition to Patterson's petition, conceding its timely filing and exhaustion of state court remedies.[23]   Contradictorily, however, the State argues that part of Patterson's first claim was not properly exhausted in the state courts and is now in technical procedural default.[24]   The State further argues that Patterson's remaining claims are procedurally barred from federal review.  Patterson filed a reply to the State's opposition re-urging the merits of his claims.[25]

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[23]Rec. Doc. No. 12, p. 3.

[24]Rec. Doc. No. 12, pp. 5-6.

[25]Rec. Doc. No. 13.

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Patterson's petition, which, for reasons discussed below, is deemed filed in this court on April 23, 2013.[27]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Patterson's petition was timely filed. The State's defenses of failure to exhaust and both technical and actual procedural default require further discussion.

Initially, I note that the State failed to recognize that Patterson's first claim makes three points, not just the one referenced in the State's opposition memorandum as the "not a crime" issue. One part of his first claim challenges the length of his sentence as being ten years longer than the five-year sentence provided in La. Rev. Stat. § 14:64.3.

---

[27]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Patterson's federal petition on May 23, 2013 when he was granted pauper status. Patterson's signature on the petition was dated April 23, 2013. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing to the court.

This claim has been fully exhausted and resolved on the merits against him in the state courts through the filing and review of the motion to correct the sentence.

As for the "not a crime" portion of the claim, the State has raised both failure to exhaust and technical procedural default as to Patterson's argument that La. Rev. Stat. § 14:63.4 was not a separate criminal charge for which the state trial court could have accepted a guilty plea.  The record reflects that Patterson presented this argument at each level of the state courts, albeit at different points in his state post-conviction pursuits.  He first presented the claim in the Louisiana Fifth Circuit and Louisiana Supreme Court through an application for supervisory review of the denial of his motion to correct his sentence.  He raised it again to the trial court in his first state application for post-conviction relief.  Each time, the claim was rejected as meritless, and no procedural basis was referenced by the courts in those rulings.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).  Nevertheless, because the claim has no merit, no clearer exhaustion is necessary before this court may address the claim.  28 U.S.C. § 2254(b)(2).

This final part of Patterson's first claim challenges the voluntariness of the waiver of his constitutional rights in connection with his guilty plea.  As the State argued, this claim and his other claims are all in procedural default for the following reasons.

IV.    PROCEDURAL DEFAULT (CLAIMS NOS. 1(c), 2 AND 3)

Patterson argues that (1) he could not have intelligently waived his constitutional rights upon entering a plea to a non-existent crime; (2) his counsel provided ineffective assistance in advising him to enter the plea to a non-existent charge and in agreeing to a sentence longer than the prescribed period; and (3) the cumulative errors surrounding his plea violated his constitutional rights.  Patterson asserted the first two of these arguments among the claims made in his first application for post-conviction relief, which the state trial court denied as meritless.  He did not seek further review of that ruling.

Instead, Patterson filed a second application for post-conviction relief in which he raised all three of these claims, among others.  The state trial court again denied relief, finding these three claims procedurally barred from review and Patterson's application repetitive and successive.  As outlined above, the court cited La. Code Crim. P. art. 930.3(B)(C)(D) and (E) and State v. Gaines as the bases for the procedural dismissal. The Louisiana Fifth Circuit and the Louisiana Supreme Court denied subsequent relief with no additional reasons.  Ylst, 501 U.S. at 802.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v.

13

Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Walker v. Martin, __U.S.__,

14

131 S. Ct. 1120, 1127 (2011); Glover, 128 F.3d at 902.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) Beard v. Kindler, 558 U.S. 53, 60-61 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  Beard, 558 U.S. at 60 (citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

The last reasoned decision on these issues was the judgment of the state trial court specifically citing to La. Code Crim. P. art. 930.4 and State v. Gaines, which indicates that the claims were barred from review because they were repetitive and successive.  As to Patterson's instant claims, La. Code Crim. P. art. 930.4(D) and (E) authorizes dismissal of a successive application if it fails to raise new or different claims or raises a new or different claim that was inexcusably omitted from a prior application.

The record demonstrates Patterson violated these provisions. His second application for post-conviction relief asserted previously made claims and others not raised in his first application.  Patterson did not seek review of the trial court's denial of that first application.  Thus, the only ruling on these issues from the Louisiana Supreme Court came following the procedural dismissal of his second application for post-conviction relief.  Under these circumstances, the provisions of Article 930.4(D) and (E) are adequate to bar federal review of Patterson's successive claims.  Bennett v. Whitley,

41 F.3d 1581 (5th Cir.1994); <u>Pedelahore v. Tanner</u>, No. 11-1575, 2012 WL 4970684, at

*9 (E.D. La. Sep. 24, 2012), <u>report adopted</u>, 2012 WL 5208490, at *1 (E.D. La. Oct. 17,

2012); <u>Washington v. Cain</u>, No. 98-0584, 2000 WL 863980 (E.D. La. June 27, 2000); <u>see</u>

<u>also</u>, <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902.

 The state courts' rulings, therefore, were based on Louisiana law setting forth the

procedural requirements for the presentation of post-conviction claims.  <u>See</u> <u>Fisher</u>, 169

F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the

issue).  The state courts' reasons for dismissal of Patterson's claims were therefore

independent of federal law and adequate to bar review of his claims in this court.

B. <u>CAUSE AND PREJUDICE</u>

 A federal habeas petitioner may be excepted from the procedural default rule only

if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate

that the federal court's failure to review the defaulted claim will result in a "fundamental

miscarriage of justice."  <u>Id</u>., at 301 (citing <u>Coleman</u>, 501 U.S. at 748-50); <u>Amos</u>, 61 F.3d

at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

 To establish cause for a procedural default, a petitioner must demonstrate that

some objective factor external to the defense impeded his efforts to comply with the

state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that

petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed

16

to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id., at 486.

In this case, Patterson has not offered any cause for the default which would excuse the procedural bars imposed by the Louisiana courts.  As the State notes, Patterson arguably suggests that his first application for post-conviction relief should not have preempted subsequent review of his claims since he intended only to obtain an out-of-time appeal through the first application.  Patterson requested an out-of-time appeal and "[i]n the alternative," any other relief the court deemed proper.[28]  The state trial court denied the request for an out-of-time appeal, but nevertheless considered whether the asserted grounds for relief would entitle Patterson to post-conviction relief, which they did not. This is not an instance in which Patterson was prevented from seeking state review, but instead an instance where he sought initial review but failed to complete the review process in a procedurally proper manner under state law.

My review of the record does not support a finding that any factor external to the defense prevented Patterson from asserting all of his claims in a procedurally proper manner.  The record also does not reflect any action or inaction by the State which prevented him from doing so.

---

[28]St. Rec. Vol. 1 of 2, Application for Post-Conviction Relief, 9/27/11 (dated 9/22/11).

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

18

When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Patterson presents no argument and the record contains nothing suggesting his actual innocence on the underlying conviction of armed robbery with a firearm.  His claims address only that he pleaded guilty under an incorrect statutory number.  He neither declares nor establishes his actual innocence.  For these reasons, Patterson has failed to overcome the procedural bar to his claims, and his claims that he could not have intelligently waived his constitutional rights upon entering a plea to a non-existent crime, that his counsel provided ineffective assistance in advising him to enter the plea to a non-existent charge and in agreeing to a sentence longer than the prescribed period, and that the cumulative errors surrounding his plea violated his constitutional rights must be dismissed with prejudice as procedurally barred.

V.    STANDARDS OF MERITS REVIEW OF REMAINING CLAIMS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

20

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

IV.   INVALID GUILTY PLEA AND IMPROPER SENTENCE

Patterson argues that the state trial court erred in accepting a plea to a statutory

provision, La. Rev. Stat. § 14:64.3, that is not itself a crime but is only a sentence

enhancement provision.  He also contends that his sentence of 15 years in prison exceeds

the sentence allowed under La. Rev. Stat. § 14:64.3.

As indicated above, Patterson asserted these claims in the state courts where each

was found meritless. The state trial court first denied him relief on the length of his

sentence when the issue was raised in the motion to correct his sentence.  The court held

that, by its terms, the five years allowed under Section 14:64.3 was to be added to the

sentence imposed under the armed robbery provision, Section 14:64.  In Patterson's case,

the five years was added to the ten-year minimum sentence, resulting in a total of 15

years.

While the "plea to the enhancement statute" issue was not directly addressed by

the Louisiana Fifth Circuit or the Louisiana Supreme Court when given the chance on

review of the motion to correct, the state trial court later found no merit in the claim.  The

court held that the bill of information clearly charged Patterson with armed robbery in

violation of La. Rev. Stat. § 14:64 while in possession of a dangerous weapon, invoking

the enhancement under La. Rev. Stat. § 14:64.3.[29]  Patterson did not seek review of that

merits ruling.

The validity of a guilty plea is a question of law, although historical facts are

entitled to a presumption of correctness.  Parke v. Raley, 506 U.S. 20, 35 (1992) (citing

Marshall v. Lonberger, 459 U.S. 422, 431 (1983)); United States v. Hernandez, 234 F.3d

252, 254 (5th Cir. 2000) (citing United States v. Amaya, 111 F.3d 386, 388 (5th Cir.

1997)); Barnes v. Johnson, 160 F.3d 218, 222 (5th Cir. 1988). The court must therefore

---

[29]St. Rec. Vol. 1 of 2, Trial Court Order, 1/24/12.

determine if denial of relief was contrary to, or an unreasonable application of, federal law.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000) (citing James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995)). A prisoner generally may not "collaterally attack a voluntary and intelligent" plea. Taylor v. Whitley, 933 F.2d 325, 329 (5th Cir. 1991). "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead . . . without being coerced to do so, the . . . plea . . . will be upheld on federal review." Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), modified on other grounds, 646 F.2d 902 (5th Cir. 1981).

A plea therefore "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" Id. (quoting Brady, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. Amaya, 111 F.3d at 389.

A plea qualifies as intelligent when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally

recognized requirement of due process.'" Bousley, 523 U.S. at 618 (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). A "plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." James, 56 F.3d at 666 (citing Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976)).

In addition, "[t]he consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990); Ables v. Scott, 73 F.3d 591, 592 n. 2 (5th Cir. 1996). A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes. Hobbs v. Blackburn, 752 F.2d 1079, 1082 (5th Cir.), cert. denied, 474 U.S. 838 (1985); Hernandez, 234 F.3d at 256-57 (with respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence).

In this case, Patterson's claim is based on a factually inaccurate representation, and the state court record shows his plea was constitutionally sound. The bill of information clearly charged that Patterson and Long "violated R.S. 14:64, in that they did rob Rebecca Givens [sic] while armed with a dangerous weapon, to wit: a handgun as per

14:64.3."[30]  Patterson was on notice at the outset that the true nature of his charge was the armed robbery of the bar.

Moreover, the transcript of Patterson's guilty plea clearly shows that he was advised in writing on his plea form and again several times at the plea hearing that he was entering a plea of guilty to armed robbery with a firearm.[31]  He also was advised in writing and at the hearing of the sentencing range he faced for the charge of armed robbery with a firearm.[32]  For example, the trial judge repeated the sentence to assure Patterson's understanding:[33]

> THE COURT:      Okay.  I want you to understand the sentencing range for armed robbery with a firearm is fifteen to ninety-nine years, without benefit of probation, parole, or suspension of sentence.  Do you understand that?
>
> MR. DARIUS R. PATTERSON:        Yes, sir.
>
> THE COURT:      Okay.  I want you to understand that your sentence for this guilty plea will be as follows: it will be fifteen years at hard labor, Department of Corrections, without benefit of probation, parole, or suspension of sentence.  Do you understand that?
>
> MR. DARIUS R. PATTERSON:        (Motions with head).

---

[30]St. Rec. Vol. 1 of 2, Bill of Information, 11/23/09.

[31]St. Rec. Vol. 1 of 2, Plea Transcript, pp. 4, 8/12/10; Waiver of Constitutional Rights Plea of Guilty, 8/12/10.

[32]St. Rec. Vol. 1 of 2, Plea Transcript, pp. 6-7; Waiver of Constitutional Rights Plea of Guilty, 8/12/10.

[33]Id. (emphasis added).

THE COURT:        Okay.
(COURT REPORTED REQUESTS VERBAL RESPONSE)

MR. DARIUS R. PATTERSON:        Yes, sir.

The court went on to advise Patterson that the conviction after his plea could be

used to enhance any future felony.  For example, the court explained that "[i]f you were

to get out of jail, and let's say you commit another armed robbery," his conviction for

this charge could be used in a multiple bill.[34]  Patterson expressed his understanding.  The

state trial court then sentenced Patterson in accordance with the foregoing advice and

acknowledgments after finding the plea knowing, intelligent, free and voluntary:[35]

> THE COURT:        Okay.  Mr. Patterson, it is going to be the sentence of
> this Court, in case 09-1680, for armed robbery with a firearm, I am going
> to sentence you to fifteen years at hard labor, the Department of
> Corrections, without benefit of probation, parole, or suspension of
> sentence, but I will give you credit for time served.  Alright?  Good luck,
> Mr. Patterson.

The record and circumstances surrounding the plea establish that Patterson knew

he was pleading guilty to an armed robbery for which his sentence was being enhanced

as a result of his use of a gun.  Based on the foregoing, I find no merit to Patterson's

underlying factual allegation that he was not charged with and did not knowingly and

voluntarily plead guilty to a charge of armed robbery.

---

[34]Id., p. 8.

[35]Id., pp. 9-10.

Furthermore, the record also reflects that Patterson understood the consequences of the plea, including the sentence he faced.  Under Louisiana law, as explained by the state trial court in its prior rulings, the five-year weapon enhancement under La. Rev. Stat. § 14:64.3 was to be added to, or run consecutively with, the penalty for the underlying armed robbery, ranging from ten years to 99 years in prison under La. Rev. Stat. § 14:64(B).  The trial court pronounced the possible range for Patterson to be from 15 years to 99 years in prison.  In Patterson's case, however, there was an agreed upon sentence as part of his plea which provided that the five years would run consecutively to the ten-year minimum under La. Rev. Stat. § 14:64, for a total sentence of 15 years in prison at hard labor without benefits.  This consequence was made abundantly clear at the plea hearing and memorialized in writing on the plea form signed by Patterson.

Patterson has not shown that the state court decisions denying relief on these claims was contrary to or involved an unreasonable application of Supreme Court law. He is not entitled to relief.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Patterson's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[36]

New Orleans, Louisiana, this ____21st____ day of February, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[36]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.